Brian Gardner
**SULLIVAN GARDNER PC**
475 Park Avenue South
New York, New York 10016
(212) 687-5900,  FAX (212) 687-4060
Attorneys for the Plaintiff

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| EUGENE SOKOLOWSKI | ) |
| Plaintiff, | ) Case No. **11 CV 2623** |
| -AGAINST- | ) |
| METROPOLITAN TRANSPORTATION AUTHORITY, MTA METRO-NORTH RAILROAD and MTA METRO-NORTH COMMUTER RAILROAD, | ) **COMPLAINT** |
| Defendants. | ) Jury Trial Demanded |

Plaintiff Eugene Sokolowski ("Sokolowski" or "Plaintiff") files this Complaint, complaining of Defendants Metropolitan Transportation Authority, MTA Metro-North Railroad and MTA Metro North Commuter Railroad (hereinafter referred to collectively as the "MTA" or the "Defendants"), and states:

## SUMMARY OF THE ALLEGATIONS

1.     Plaintiff brings claims pursuant to the Railway Labor Act (45 U.S.C. § 151 *et seq.*), seeking to vacate an award of the Special Board of Adjustment No. 1001, Award No. 134, which upheld the MTA's decision to terminate his employment.

---

2.      The Plaintiff also brings claims pursuant to the New York State Human Rights Law (N.Y. Exec. Law § 296 *et seq*.) and the New York City Administrative Code (N.Y.C. Code §8-101 *et seq*.) in that the MTA wrongfully terminated the Plaintiff, a qualified employee, based on his age.

## THE PARTIES

3.      Plaintiff Eugene Sokolowski is a resident of the State of New York, residing at 359 Vineyard Avenue, Highland, New York.

4.      Defendant Metropolitan Transportation Authority is a public benefit corporation created under Title 11 of Article 5 of the New York Public Authorities Law.

5.      Defendant MTA Metro-North Railroad is an agency of the Metropolitan Transportation Authority engaged in interstate commerce by rail and operates a railroad system within the jurisdiction of this Court.

6.      Defendant MTA Metro-North Commuter Railroad is an agency of the Metropolitan Transportation Authority engaged in interstate commerce by rail and operates a railroad system within the jurisdiction of this Court.

## JURISDICTION

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 45 U.S.C. § 153, because the Plaintiff brings a federal question under the Railway Labor Act. This Court has supplemental jurisdiction over the Plaintiff's State and City Law Claims pursuant to 28 U.S.C. §1367(a) in that the State and City Law claims are so related to the claims in this action over which this Court has subject matter jurisdiction that they form part of the same case and controversy.

6.      Venue is proper in the Southern District of New York, pursuant to 45 U.S.C. § 153 (p) and (q), as the principal operating office of the Defendants is located in said District, and a substantial part of the acts or omissions giving rise to the Plaintiff's claims occurred within this District.

## FACTS APPLICABLE TO ALL COUNTS

7.      Sokolowski worked for the MTA for approximately twenty-two years. At the time of his termination, on September 2, 2010, Sokolowski held the position of Mechanical Foreman regarding the maintenance and repair of MTA elevators. He was 45 years old at the time of his termination.

8.      Sokolowski maintained an unblemished record with the MTA in his 22 years of employment.

9.      Some time prior to July 16, 2010, the MTA issued an Operating Procedure pertaining to Alcohol and Substance Abuse. Section 21-012 of said Operating Procedure prohibits employees from appearing at work if they are under the influence, and prohibits employees from possessing drugs in the work place.

10.     Some time prior to July 16, 2010, the MTA issued General Safety Instructions. Pursuant to Instruction 200.8, employees are prohibited from appearing at work if they are under the influence, and prohibits employees from possessing drugs in the work place.

11.     Section 21-012 and Instruction 200.8 proscribe the same conduct. As such, any employee determined to have violated one has necessarily violated the other.

12.     The terms of Sokolowski's employment are governed by a collective bargaining agreement entered into between his union, the American Railway & Airway Supervisors' Association Maintenance of Equipment Union (ARASA), and the MTA. Sokolowski had been a member of the ARASA, or its parent international union, for approximately 22 years.

13.     Some time prior to July 16, 2010, the ARASA negotiated an agreement with the MTA regarding the treatment of employees found to have violated a substance abuse rule. This agreement is known as the "Rule "G"/Similar Substance Rule Bypass Agreement," commonly referred to as the "SAVE Agreement." The SAVE Agreement provides, in pertinent part, that if an employee is removed from service for a substance abuse policy violation, the employee has the option of submitting to the Metro-North Employee Assistance Program ("EAP") and accepting counseling. The employee is permitted to return to service pending a "favorable recommendation" by the EAP counselor (hereinafter referred to as the "SAVE Waiver").

14.     In order to apply for the SAVE Waiver, the substance rule violation must be a first offense, and must not involve any other apparent rule violation:

> An apparent . . substance rule violation which is a first offense and which does not involve any other apparent rule violation, whether reported by a fellow worker or discovered by a Metro-North officer, will be addressed in the following manner. . .

15.     If an employee applies for the SAVE Waiver, they are required to be mailed a waiver letter within 24 hours of removal from service ("Waiver Letter"). Thereafter, the employee must take certain steps, and meet certain conditions, pursuant to the SAVE Agreement, in order to be reinstated to employment.

16.     The SAVE Agreement is mandatory and binding on the MTA.

17.     Sokolowski is an "employee" within the meaning of the SAVE Agreement.

18.     At all times relevant herein, Sokolowski was eligible, and otherwise qualified, to be offered and/or receive the SAVE Waiver. Sokolowski applied for the SAVE Waiver with the MTA, however the MTA has refused to extend the SAVE Waiver to him.

The Institution of piled-on charges against Sokolowski

19.     On July 22, 2010, the MTA instituted three charges against Sokolowski (the "Charges") as follows:

> 1. Violation of Metro-North's Substance Abuse Policy number 21-012 and General Safety Instruction 200.8 in that the urine specimen you submitted at 4:30AM on Friday, July 16, 2010, for reasonable suspicion in the Metro-North OHS Department, was positive for a controlled substance.

> 2. Conduct unbecoming a Metro-North employee and violation of Metro-North's Substance Abuse Policy number 21-012 and General Safety Instruction 200.8 in that on July 16, 2010 at approximately 12:35 AM, you were in possession of a controlled substance, drug paraphernalia and alcohol on Metro-North property, in an office in the vicinity of the Track 100 area in Grand Central terminal for which you were issued a criminal summons by the MTAPD.

> 3. Conduct unbecoming a Metro-North employee and failure to perform duties as assigned in that while on duty July 16, 2010 as a Foreman during your tour of duty 12:00 AM to 8:00 AM, at approximately 12:35 AM you were in an office in the vicinity of Track 100 in Grand Central Terminal with two other employees with a controlled substance, drug paraphernalia and alcohol present.

Disciplinary Hearing

20.     A disciplinary hearing was held on or about August 25, 2010 to investigate the Charges (the "Hearing"). At the Hearing, it was revealed that all of the Charges against Sokolowski arose out of a single incident occurring on or about July 16, 2010 (the "Incident").

21.     The facts and circumstances regarding the Incident were testified to at the Hearing as follows: on July 16, 2010, acting on an anonymous tip, personnel from the Inspector General's Office entered an office located in Grand Central Terminal, New York City, occupied by Sokolowski and two other MTA employees. The officers had claimed that they smelled a "distinctive odor" outside of the office before they entered.

In the office was Sokolowski and MTA employees Steven Hussey, Sokolowski's supervisor, and Thomas Palazzolo. They were observed sitting around a desk which had a bottle of alcohol on it. Upon being questioned by the officers, Sokolowski stated that he had not smoked marijuana on duty, but had smoked marijuana the weekend before. He voluntarily removed from his pocket a bag of marijuana and turned it over to the officers.

22.    At the Hearing, testimony was further offered that, at the MTA's direction, on the night of the Incident Sokolowski submitted a urine sample, and that he tested positive for "Marijuana Metabolites" but negative for alcohol and all other test parameters. After giving the urine test, the MTA Inspector General personnel allowed Mr. Sokolowski to drive home by himself.

Sokolowki's removal from service

23.    Sokolowski was removed from service on July 16, 2010 as a result of the Incident.

24.    Pursuant to the terms of the SAVE Agreement, the MTA was required to send Sokolowski a waiver letter and extent to him all of the benefits of the SAVE Agreement, including the SAVE Waiver. Sokolowski qualified for the SAVE Agreement, and should have been offered the SAVE Waiver.

25.    However, in contravention of the Save Agreement, the MTA never sent Sokolowski a Waiver Letter, as mandated by the SAVE Agreement, within 24 hours after removal, or at any time thereafter. The Plaintiff was not sent a Waiver Letter, was intentionally prohibited from participating in the SAVE program, and was otherwise refused the SAVE Waiver.

26.     Had Sokolowski been offered the SAVE Waiver, he would have accepted it and completed all of its requirements. Indeed, Sokolowski properly and timely applied for the SAVE Waiver, however the MTA refused to extend to him the benefits of the SAVE Waiver, and have refused to allow him access to the SAVE program to date.

27.     Prior to this Incident, the MTA has never refused to offer the SAVE Waiver to a similarly situated employee.

28.     This Incident represents the first instance of an employee violating a substance abuse policy and not being offered the SAVE Waiver.

Revelations of the MTA's discriminatory and disparate treatment of Sokolowski and other culpable conduct revealed at the Hearing

29.     At the Hearing the MTA was questioned by Sokolowski's union representative, as to why they did not provide Sokolwoski with the SAVE Waiver. The MTA representative, Rita Seaton, Superintendent of Operation Support at Grand Central Terminal, testified that Sokolowski was not provided with the waiver because the MTA had received bad publicity over the incident as the details of the incident had been leaked to the media by the MTA, and a news article published about it.

30.     It was revealed that, prior to this Incident, Seaton had always offered the SAVE Waiver to employees who violated the Substance Abuse Policy. It was further revealed that the only reason she did not offer the SAVE Waiver to him is that she was ordered not to offer it to him by more senior officials in the MTA.

31.     Indeed, Seaton testified that in all other instances of substance abuse policy violations, she *always* offered a waiver under the SAVE Agreement. She testified – and in fact it is the case – that this was the first incident of an alleged drug violation where a waiver under the SAVE Agreement was not offered.

32.   Seaton testified that she was "ordered" not to provide the Waiver based on the coverage the Incident had garnered in the media, i.e., a single article in the New York Daily News ("Daily News Article"), dated July 18, 2010.

33.   When Seaton was questioned as to the source of the Daily News Article, Seaton revealed that the story was leaked by the president's office of the MTA. As such the MTA itself created the media coverage that it was using it to attempt to justify its disparate treatment of Sokolwoski.

34.   Seaton was called to testify at the hearing by the MTA as their witness. No testimony or evidence was submitted that contradicts her testimony as set forth in paragraphs 29 through 33 above.

Termination of Sokolowki's employment.

35.   On September 2, 2010 Sokolowski was terminated from his employment with the MTA, pursuant to a Notice of Discipline from the MTA.

36.   Sokolowski's subsequent appeal was denied by letter of Ferdinand L. Risco Jr. of the MTA, dated September 21, 2010. The MTA based its denial of Sokolowski's appeal on its conclusion that because guilt was proven on each of the three charges, Sokolowski was not eligible for the SAVE Waiver.

37.   In its denial letter the MTA presented two examples of employees not being offered the SAVE waiver, which examples evidence the type of multiple-infraction cases, not applicable here, in which a waiver will be denied: "a Machinist that presented himself for work after having consumed alcoholic beverages (in violation of the policy) and subsequently crashed a motorized cart, damaging company property and injuring himself," and "a Custodian who tested positive for a controlled substance was dismissed without a waiver for submitting a false

urine sample." These examples reveal the broad nature of the SAVE Waiver; that it will only be refused where someone commits two distinct rule violations, one of which is separable from the initial substance abuse violation.

38.     Moreover, the Save Agreement specifically contemplates that various policies may overlap the same conduct, and that violation of same will not count as separate rule violations so as to exempt an employee for its protection. Specifically, the Agreement states it applies to "[A]pparent Rule G or similar substance rule violation. . .," thus indicating that an employee could have violated more than one rule/policy and still apply for the SAVE Waiver.

39.     No other employee, prior to the Incident, had ever been refused the SAVE Waiver where, as here, there was only a single instance of a substance abuse policy violation, no matter how many different ways it is charged.

40.     Sokolowski at all times requested the SAVE Waiver, and intended to, and would have, accepted the SAVE Waiver, and undertaken all requirements and conditions required by the SAVE Agreement. At all times relevant herein, Sokolowski was qualified for the SAVE Waiver.

41.     Notwithstanding the MTA's failure to provide him a SAVE Waiver, Sokolowski has followed the applicable requirements and conditions of the SAVE Agreement. Specifically, after being removed from service, Sokolowski reported for, and successfully completed, counseling through the MTA's Employee Assistance Program.

The Arbitration Award of the Special Board of Adjustment

42.     The matter thereafter went before the Special Board of Adjustment 1001 (the "Board") which, in an eight page decision, Award No. 134 (hereinafter referred to as the "Decision" or the "Award"), affirmed the MTA's decision to terminate Sokolowski, and held

that Sokolowski was not entitled to the SAVE Waiver. A copy of the Board's Decision is annexed hereto as Exhibit A.

43.     The Board had before it all of the evidence and testimony elicited at the Hearing.

44.     In upholding Sokolowski's termination, the Board found that the MTA established, including by Sokolowski's own admissions, each of the Charges. The Board noted that the charges were "related" and agreed with Sokolowski that the MTA committed "somewhat over-blown piling on" in instituting Charges 2 and 3 against Sokolowski, all arising out of the same incident. After indicating that there are no separate rule violations, but only redundancies of the same charge, the Board states that said redundancies were not a "fatal error" and upheld the termination.

45.     The Board acknowledged that the result of termination was extremely "harsh," stating: "It is unfortunate and painful to the point of tragedy." The Board would have reinstated Sokolowski based upon its notion of industrial justice, but incorrectly believed it could not do so: "We can find no basis for reversing Carrier's decision to terminate the Appellant's employment. Even though the result may seem harsh, leniency in such a case simply cannot be dictated by an arbitration Board based solely on our personalized notions of industrial justice."

46.     The Board believed it could not reinstate Sokolowski based on its incorrect belief that it was constrained to a review based on an arbitrary and capricious standard:

> "termination for such serious proven charges is not on its face arbitrary, capricious or unreasonable. The Carrier's decision to deny the leniency request was not a violation of the language of the SAVE agreement."

47.     Notably, in reviewing the charges against Sokolowski, the Board only found a violation of one rule, section 21-012 of the Substance Abuse Policy, the same rule violation for

the same conduct alleged in each charge. The Board did not find a violation of General Safety Instruction 200.8.

48.     The Board next found that Sokolowski did not have a right to the SAVE Waiver. It based this determination not upon a finding of multiple rule violations, but rather upon what it termed the "egregious nature" of the Charges: "[G]iven the egregious nature of the Appellant's violations, the Appellant in this particular case did not have a demand right to a SAVE waiver." The SAVE Agreement, however, provides that the only basis for withholding the SAVE Waiver from an employee is where multiple rule violations are found, which was not the case here.

49.     The Board's finding that the charges against Sokolowski were "egregious" was the sole basis for its determination that Sokolowski was not entitled to the SAVE Waiver.

50.     Pursuant to the CBA, no further appeals of the decision to terminate Sokolowski's employment can be taken through the MTA. As such, Sokolowski has exhausted his administrative remedies.

Sokolowski's continued termination is in direct violation of the SAVE Agreement, and as such was improper

   i.     *General Instruction 200.8 in Charges 1 and 2, and the Charges of "conduct unbecoming" and "failure to perform duties" and other statements in Charges 2 and 3, are not additional rule violations within the meaning of the SAVE Agreement.*

51.     By its plain meaning, the SAVE Agreement is mandatory unless the employee committed an additional "rule" violation.

52.     The only actual "rule" cited as violated in the charges was Section 21-012 of the Substance Abuse Policy. The only "rule" found by the Board to have been violated is this same rule, Section 21-012 of the Substance Abuse Policy.

53.     General Instruction 200.8 is not a "rule" but rather is, by its very name, an "Instruction," the violation of which does not exempt an employee from entitlement to a SAVE Waiver. General Instruction 200.8 and Substance Abuse Policy 21-012 overlap so significantly that they proscribe the same conduct. As there can be no violation of one without the other, the SAVE Agreement would never apply in the event both were deemed separate "rule" violations within the meaning of the SAVE Agreement.

54.     Similarly, "conduct unbecoming" and "failure to perform duties" are not rule violations within the meaning of the SAVE Agreement. "Conduct unbecoming" and "failure to perform duties" are not derived from any MTA rule, but rather relate to general and vague codes of conduct which may not even be reduced to writing. The charges citing such "violations" do not cite any rule that was violated as a result of these charges.

55.     Stated differently, conduct that violates identical prohibitions contained in the Substance Abuse Policy and General Safety Instructions, as well as general claims of "conduct unbecoming" and "failure to perform," cannot amount to separate "rule" violations under the SAVE Agreement.

56.     That three charges were instituted against Sokolowski does not mean that Sokolowski committed three rule violations. By contrast, all three charges against him not only arise out of the same incident and involve the same transactions and occurrences, but they cite only one rule, Section 21-012 of the Substance Abuse Policy. As such, even assuming guilt on all the charges, only one rule violation could have been committed, to wit, violation of 21-012 of the Substance Abuse Policy.

57.     Furthermore, the Board found only one rule violation, Section 21-012 of the Substance Abuse Policy.

58.     As such, there is no additional rule violation within the meaning of the SAVE Agreement, and therefore the MTA was required to offer Sokolowski the SAVE Waiver and reinstate his employment in accordance with the terms of the SAVE Agreement.

   ii.     *The pilling on of additional charges, all arising out of the same Incident, does not bring Sokolowski outside the scope of the SAVE Agreement.*

59.     Even were Section 21-012 of the Substance Abuse Policy, General Instruction 200.8, or the charges of "conduct unbecoming" and "failure to perform duties," to constitute one or more rule violations, they cannot exempt Sokolowski from the protections of the SAVE Agreement.

60.     First, the sole basis for each of the Charges against Sokolowski is the transpiring of one single incident: the Incident of July 16, 2010. Each Charge arises out of, and merely restates, the facts and circumstances of that single Incident. It is only through an exercise in semantics that the MTA was able to transform the single incident into more than one charge.

61.     Second, the SAVE Agreement is rendered utterly meaningless if the MTA can transform a single instance of a substance abuse violation such as the one in issue into multiple charges and purported rule violations. This would have the effect of exempting every employee found to have committed a substance abuse violation from the protections of the SAVE Agreement, as any single substance abuse violation can, through the semantics employed by the MTA here, be transformed into multiple rule violations.

The Board acted outside of its jurisdiction in upholding Sokolowski's termination.

62.     An arbitration board's award will not be upheld where the board did not confine itself to its proper jurisdiction. (See 45 U.S.C. § 153(q)). Where the decision of an arbitration

board is without foundation in reason or fact, the board has acted outside of its jurisdiction and its award will be deemed unenforceable. Here, the Board so acted outside of its jurisdiction.

63.     The Board in this case made numerous findings and conclusion that were not only without any foundation in reason or fact, but that directly contradicted the undisputed facts before it.

64.     First, the Board failed to adhere to the plain language and meaning of the SAVE agreement, instead making impermissible findings based on its subjective evaluation of the "egregious nature" of those Charges. The Board found that based on the "egregious nature" of the Charges, Sokolowski was not eligible for the SAVE Waiver. The Board was wholly without jurisdiction to make such findings based on the plain language and meaning of the SAVE Agreement, which mandates that an employee will only be exempted from its protections where there is an additional rule violation. The SAVE Agreement does not exempt an employee from its protections based on the egregious nature of those charges nor based on the number of charges instituted against an employee.

65.     In determining that Sokolowski's termination could not be overturned, the Board noted redundancies in the Charges, and found that only one rule had been violated i.e., Section 21-012 of the Substance Abuse Policy. The finding of only one rule violation mandated that Sokolowski be offered the SAVE Waiver. Yet, in its analysis regarding the SAVE Waiver, the Board completely ignored this finding, but rather held that Sokolowski was not entitled to the SAVE Waiver based on the "egregious nature" of the Charges. The Board's determination, as such, is without foundation in reason or fact, as it finds only one rule violation, yet refused to offer him the SAVE Waiver, which refusal can only be had where there is more than one rule violation.

66.   Second, the Board declined to reinstate Sokolowski based on its finding that there was no "discrimination, animus or disparate treatment." This finding is entirely without any factual basis, and in fact directly contradicts the undisputed testimony of MTA representative Seaton. Seaton testified that she has always offered a waiver in substance abuse cases, and that this was the first alleged substance abuse violation where she was ordered not to offer a waiver. Moreover, she revealed that she was instructed that the reason for treating this case differently was the Daily News Article, which was as the result of the MTA reporting the story itself to the press.

67.   Third, the Board misapplied and misapprehended its authority under the Railway Labor Act, by stating that its was confined to an arbitrary and capricious standard, and wrongfully declining to exercise its proper discretion to remedy the entirely inequitable and improper treatment of Sokolowski, as the Railway Labor Act does not mandate the imposition of such a standard, but rather gives the Board de novo review of the employer's decision to terminate an employee. The Board indicated that its decision would have been different had a lower standard been applied.

68.   As such, the Board's Award should be reversed and Sokolowski reinstated to his employment with an award of back wages or, alternatively, the matter should be remanded to the Board.

## COUNT ONE

**The Board Acted Outside its Jurisdiction, within the meaning of**
**45 U.S.C. § 151 *et seq.*, in failing to determine that Sokolowski was entitled to**
**the SAVE Waiver**

69.   The Plaintiff repeats and realleges, each and every allegation set forth above as though fully set forth herein.

70.    The Board's decision runs directly contrary to the clear language of the SAVE Agreement, is directly contrary to the letter and spirit of the SAVE Agreement, is wholly without any basis in reason or fact, and is therefore outside of the Board's jurisdiction.

71.    By its plain meaning, the SAVE Agreement does not give the MTA discretion to deny a waiver based on the severity or "egregious nature" of violations. Rather, the wording is clear: an employee is entitled to the waiver unless there is "any other apparent *rule* violation." (emphasis added).

72.    The Board did not find a violation of more than one rule. The Board found that only one rule violation for the single Incident had been established, i.e., violation of Substance Abuse Policy 21-012.

73.    The Board acted entirely outside its jurisdiction in that it did not confine itself to a determination of whether or not there were additional rule violations (of which there were none), which it was required to do under the plain meaning of the SAVE Agreement.

74.    There is absolutely no basis in reason or fact to find that Sokolowski was not entitled to the SAVE Waiver, as the only ground for exempting him from the waiver, an additional rule violation, was not found by the Board. Rather, the Board relied solely on an entirely different and improperly created standard – egregiousness – in determining that Sokolowski was not entitled to the SAVE Waiver. The Board did not confine itself to the correct review. It made impermissible findings and conclusions directly contradictory to the letter and spirit of the SAVE Agreement. As such, the Board acted entirely outside the scope of its jurisdiction.

75.    Sokolowski requested and applied for the SAVE Waiver, however the MTA refused to extend same to him. Had the MTA followed the SAVE Agreement and offered the

SAVE Waiver to him, Sokolowski would have successfully completed all requirements and been reinstated to his employment. Indeed, Sokolowski has successfully completed the EAP program required under the SAVE Agreement.

76.     The Boards' Award is thus without any basis in reason or fact, and falls entirely outside of the Board's jurisdiction within the meaning of 45 U.S.C. § 151 *et seq.*, including, but not limited to, 45 U.S.C. §153(q).

77.     Wherefore, the Plaintiff requests an Order reversing the Board's Award, reinstating him to his employment and awarding him back wages, or, alternatively, an Order remanding the matter to the Board for the issuance of an award within the proper scope of the Board's jurisdiction, including a direction to render a determination within the plain meaning of the SAVE Agreement.

## COUNT TWO

### The Board Acted Outside its Jurisdiction, within the meaning of 45 U.S.C. §151 *et seq.*, in failing to determine that Sokolowski was entitled to the SAVE Waiver

78.     The Plaintiff repeats and realleges, each and every allegation set forth above as though fully set forth herein.

79.     The SAVE Agreement does not give the MTA discretion to deny a waiver based on the severity or "egregious nature" of violations. Rather, the wording is clear: an employee is entitled to the waiver unless there is "any other apparent *rule* violation." (emphasis added).

80.     The Board did not follow the plain meaning of the SAVE Agreement. Rather, it made impermissible findings regarding the nature of the charges against Sokolowski, expressly finding that he was not entitled to the SAVE waiver because of the purported "egregious" nature of the charges against him.

81.    The Board had no authority to make such a finding, much less deny Sokolwoski the benefits of the SAVE Agreement based on such impermissible finding. The Board's award is thus without any basis in reason or fact, and therefore constitutes an award entirely outside of its jurisdiction.

82.    Sokolowski requested and applied for the SAVE Waiver, however the MTA refused to extend same to him. Had the MTA followed the SAVE Agreement and offered the SAVE Waiver to him, Sokolowski would have successfully completed all requirements and been reinstated to his employment. Indeed, Sokolowski has successfully completed the EAP program required under the SAVE Agreement.

83.    The Boards' Award is thus without any basis in reason or fact, and falls entirely outside of the Board's jurisdiction within the meaning of 45 U.S.C. § 151 *et seq.*, including, but not limited to, 45 U.S.C. §153(q).

84.    Wherefore, the Plaintiff requests an Order reversing the Board's Award, reinstating him to his employment and awarding him back wages, or, alternatively, an Order remanding the matter to the Board for the issuance of an award within the proper scope of the Board's jurisdiction, including a direction to render a determination within the plain meaning of the SAVE Agreement.

## COUNT THREE

### The Board Acted Outside its Jurisdiction, within the meaning of 45 U.S.C. §151 *et seq.*, in failing to determine that Sokolowski was entitled to the SAVE Waiver

85.    The Plaintiff repeats and realleges, each and every allegation set forth above as though fully set forth herein.

86.     Even were there to have been that there was more than one rule violation charged in this case, the Board nevertheless could only have found one rule violation within the meaning of the SAVE Agreement. The SAVE Agreement is rendered entirely meaningless unless all such purported "rule" violations, which arose out of the single Incident and identical conduct, are subsumed into one violation. As such, to the extent that the Board's Decision is based on more than one rule violation, it is without any foundation in reason or fact.

87.     Sokolowski requested and applied for the SAVE Waiver, however the MTA refused to extend same to him. Had the MTA followed the SAVE Agreement and offered the SAVE Waiver to him, Sokolowski would have successfully completed all requirements and been reinstated to his employment. Indeed, Sokolowski has successfully completed the EAP program required under the SAVE Agreement.

88.     The Boards' Award is thus without any basis in reason or fact, and falls entirely outside of the Board's jurisdiction within the meaning of 45 U.S.C. § 151 *et seq.*, including, but not limited to, 45 U.S.C. §153(q).

89.     Wherefore, the Plaintiff requests an Order reversing the Board's Award, reinstating him to his employment and awarding him back wages, or, alternatively, an Order remanding the matter to the Board for the issuance of an award within the proper scope of the Board's jurisdiction, including a direction that General Instruction 200.8, and the charges of "conduct unbecoming" and "failure to perform duties" in the instant matter, are not additional rule violations within the meaning of the SAVE Agreement.

## COUNT FOUR

**The Board Acted Outside its Jurisdiction, within the meaning of
45 U.S.C. §151 *et seq*., in upholding Sokolowski's termination**

90.     The Plaintiff repeats and realleges, each and every allegation set forth above as though fully set forth herein.

91.     The Board misapprehended and misinterpreted its authority under Section 153 of the Railway Labor Act in confining itself to an "arbitrary and capricious" standard of review. The Board indicated that if it could have applied a lower standard of review, it would have overturned the MTA's determination.

92.     The Board cited numerous defects and errors in the MTA's termination of Sokolowski, and stated that its sense of "industrial justice" would have led it to reverse the MTA's decision but for the standard of review it believed it was obligated to impose: "leniency in such a case simply cannot be dictated by an arbitration Board based solely on our personalized notions of industrial justice."

93.     The Board felt required to overlook the inequitable and improper treatment of Sokolowski based on the "arbitrary and capricious" standard it believed it was constrained to impose. The Board specifically held: "It is unfortunate and painful to the point of tragedy. But in the final analysis, termination for such serious proven charges is not on its face arbitrary, capricious or unreasonable." The Board thus incorrectly believed it was constrained to an arbitrary and capricious standard or review.

94.     As a matter of law, the Board is not confined to an "arbitrary or capricious" standard of review. Nowhere in the Railway Labor Act is the Board confined to that standard.

95.     The Board applied a test of facial arbitrary and capriciousness, and would have reversed the MTA's decision and reinstated Sokolowski but for the fact that it incorrectly believed it was constrained to apply this standard.

96.     The Board misstated and misapprehended its authority under the Railway Labor Act as the Board *does*, as a matter of law, have the authority to act on its sense of "industrial justice."

97.     The Board did not make any determination or consideration as to the proper standard of review, but rather, *pro forma*, imposed an "arbitrary and capricious" standard. By failing to recognize that it had the discretion to use a lower standard of review, the Board misapprehended and misapplied its authority, and acted outside its jurisdiction within the meaning of Section 153(q) of the Railway Labor Act.

98.     The Boards' Award is thus without any basis in reason or fact, and falls entirely outside of the Board's jurisdiction within the meaning of 45 U.S.C. § 151 *et seq.*, including, but not limited to, 45 U.S.C. §153(q).

99.     Wherefore, the Plaintiff requests an Order reversing the Board's Award, reinstating him to his employment and awarding him back wages and other compensatory relief, or, alternatively, an Order remanding the matter to the Board for the issuance of an award within the proper scope of the Board's jurisdiction, including a direction that the Board make a finding as to the standard of its review.

## COUNT FIVE

### The Board Acted Outside its Jurisdiction, within the meaning of 45 U.S.C. §151 *et seq.*, in upholding Sokolowski's termination

100.   The Plaintiff repeats and realleges, each and every allegation set forth above as though fully set forth herein.

101.   The Board's decision indicates that it would have reversed the MTA's decision had "discrimination, animus or disparate treatment" been found. However, the Board concluded, without any explanation, that there was not any such showing. This conclusion is entirely without any basis in fact in the record before the Court, and in fact runs contrary to the undisputed evidence on the subject.

102.   MTA representative Seaton testified that in all instances of substance abuse policy violations, she *always* offered a waiver under the SAVE Agreement. She testified to the fact that this is the first incident of an alleged drug violation where a waiver under the SAVE Agreement was not offered.

103.   Furthermore, Seaton testified that the sole ground for treating this incident disparately was the media coverage of the Incident. No conflicting or contradictory evidence was submitted by either party regarding this testimony. This was not a rational or reasonable basis for the admitted disparate treatment. Further, it was entirely pretextual in that the MTA itself had reported the story to the media, and therefore created the media coverage which it used as a reason to treat Sokolowski in a discriminatory and disparate manner.

104.   The Board's conclusory statement that there was no discrimination or disparate treatment was therefore without any basis in fact. It was directly contrary to the MTA's position at the Hearing and before the Board which was the only evidence offered on the issue. As the

---

Board indicated it would have reversed the MTA's decision to terminate Sokolowski had discrimination or disparate treatment been found, and discrimination and disparate treatment, did, in fact occur, this Court should issue an Order reversing the Board's Award, reinstating Sokolowski to his employment and awarding him back wages.

105.    The Boards' Award is thus without any basis in reason or fact, and falls entirely outside of the Board's jurisdiction within the meaning of 45 U.S.C. § 151 *et seq.*, including, but not limited to, 45 U.S.C. §153(q).

106.    Wherefore, the Plaintiff requests an Order reversing the Board's Award, reinstating him to his employment and awarding him back wages and other compensatory relief, or, alternatively, an Order remanding the matter to the Board for the issuance of an award within the proper scope of the Board's jurisdiction, including an instruction that the Board is to take into proper consideration the undisputed evidence of disparate treatment.

## COUNT SIX

**The Board Acted Outside its Jurisdiction, within the meaning of**
**45 U.S.C. §151 *et seq.*, in failing to convene the committee of three pursuant to Paragraph 8**
**of the SAVE Agreement**

107.    The Plaintiff repeats and realleges, each and every allegation set forth above as though fully set forth herein.

108.    The SAVE Agreement, Paragraph 8, provides:

> If and when disagreements arise as a result of interpretations of the foregoing Agreement, a committee of three (elected by the signed unions) including the Assistant Director Personnel – Personnel Services will meet as expeditiously as possible to resolve any matters in dispute.

109.    The defenses raised by Sokolowski and the ARASA to the charges against him at the August 25 hearing, and his subsequent appeal of his termination and submittals to the Board,

included, but were not limited to, the assertion that Sokolwoski committed no additional rule violations within the meaning of the SAVE Agreement, and that without an additional "rule" violation Sokolowski was required to be offered the SAVE Waiver. The MTA disagreed with this defense. This constituted a disagreement as to the interpretation of the SAVE Agreement.

110.    As such, the MTA was required to convene a "committee of three" to resolve said disagreement. Said committee was required to be convened "as expeditiously as possible." However, no such committee was ever convened relating to this Incident.

111.    As such, pursuant to the SAVE Agreement the MTA was without authority to terminate Sokolowski until said disagreement was resolved, and the Board therefore had no jurisdiction to make any findings regarding this matter.

112.    The Boards' Award is thus without any basis in reason or fact, and falls entirely outside of the Board's jurisdiction within the meaning of 45 U.S.C. § 151 *et seq.*, including, but not limited to, 45 U.S.C. §153(q).

113.    Wherefore, the Plaintiff requests an Order reversing the Board's Award, reinstating him to his employment and awarding him back wages and other compensatory relief or, alternative,ordering the convening of the committee of three to resolve the disagreements at issue pursuant to the SAVE Agreement.

### COUNT SEVEN

### Discrimination in violation of the New York State Human Rights Law §296 *et seq.*

114.    The Plaintiff repeats and realleges, each and every allegation set forth above as though fully set forth herein.

115.    At all times relevant herein, the Plaintiff is a member of a protected class, is competent to perform his job duties, and has performed his job duties satisfactorily.

Nevertheless, the Plaintiff suffered an adverse employment decision and/or action, and said adverse decision and/or action occurred under circumstances giving rise to an inference of discrimination based on his age.

116.    Every similarly situated MTA employee has been offered the SAVE Waiver. This Incident represents the only time that a similarly situated employee was not offered the SAVE Waiver.

117.    The Incident, and the subsequent publicity surrounding the Incident created by the MTA, were used as pretext by the MTA to discriminate against Sokolwoski based on his age.

118.    Sokolowki was refused the SAVE Waiver, and terminated from his employment with the MTA, based on his age.

119.    As such, Sokolowski's termination from the MTA was an act of discrimination on the basis of age in violation of the New York Human Rights Law § 269 *et seq.*

120.    Other than this lawsuit, there is no other complaint pending with any administrative agency or court regarding the acts complained of herein.

121.    As a result of the MTA's discriminatory actions, the Plaintiff has suffered loss of income, loss of employability, and extreme emotional and mental distress which has manifested itself in a number of ways including physical manifestations.

122.    Wherefore, the Plaintiff requests an award reinstating his employment and awarding him back wages or, in the alternative, awarding him back wages and front pay, other compensatory relief, and punitive damages.

## COUNT EIGHT

**Discrimination in violation of Article 8 of the New York City Administrative Code**

123.    The Plaintiff repeats and realleges, each and every allegation set forth above as though fully set forth herein.

124.    At all times relevant herein, the Plaintiff is a member of a protected class, is competent to perform his job duties, and has performed his job duties satisfactorily. Nevertheless, the Plaintiff suffered an adverse employment decision and/or action, and said adverse decision and/or action occurred under circumstances giving rise to an inference of discrimination based on his age.

125.    Every similarly situated MTA employee has been offered the SAVE Waiver. This Incident represents the only time that a similarly situated employee was not offered the SAVE Waiver.

126.    The Incident, and the subsequent publicity surrounding the Incident created by the MTA, were used as pretext by the MTA to discriminate against Sokolwoski based on his age.

127.    Sokolowki was refused the SAVE Waiver, and terminated from his employment with the MTA, based on his age.

128.    As such, Sokolowski's termination from the MTA was an act of discrimination on the basis of age in violation of the New York City Administrative Code § 8-101 *et seq.*

129.    As a result of the MTA's discriminatory actions, the Plaintiff has suffered loss of income, loss of employability, and extreme emotional and mental distress which has manifested itself in a number of ways including physical manifestations.

130.    Wherefore, the Plaintiff requests an award reinstating his employment and awarding him back wages or, in the alternative, awarding him back wages and front pay, other compensatory relief, and punitive damages.

**WHEREFORE, Plaintiff demands judgment as follows:**

(a)    On Counts One, Two and Three for violation of 45 U.S.C. §151 *et seq.* in failing to determine that Plaintiff was entitled to the SAVE Waiver, an Order:

      a.    Reversing the Board's Decision, Award No.134, reinstating the Plaintiff's employment and awarding back pay from the date he was terminated to the date of reinstatement and front pay or, in the alternative;

      b.    Reversing the Board's Decision, ordering that the Plaintiff be offered the SAVE Waiver, and awarding back pay from the date he was terminated to the date of reinstatement and front pay or, in the alternative;

      c.    Remanding the matter to the Board for the issuance of an award within its proper jurisdiction, including a direction that it is to determine whether or not there were any additional rule violations within the plain meaning of the SAVE Agreement, what the proper standard of review is, and instructing the Board that General Instruction 200.8, "conduct unbecoming" and "failure to perform duties" do not constitute rule violations within the meaning of the SAVE Agreement.

      d.    Such other and further relief as the Court deems just, equitable and proper.

(b)    On Counts Four and Five for violation of 45 U.S.C. §151 *et seq.* in upholding Sokolowski's termination, an Order:

    a.  Reversing the Board's Decision, Award No.134, reinstating the Plaintiff's employment and awarding back pay from the date he was terminated to the date of reinstatement and front pay or, in the alternative;

    b.  Remanding the matter to the Board for the issuance of an award within its proper jurisdiction, including a direction as to the Board's authority to apply standards or review, and instructing the Board to take into proper consideration the undisputed evidence of disparate treatment.

    c.  Such other and further relief as the Court deems just, equitable and proper.

(c)     On Count Six for violation of 45 U.S.C. §151 *et seq.* in failing to convene the committee of three pursuant to Paragraph 8 of the SAVE Agreement, an Order:

    a.  Reversing the Board's Decision, Award No.134, reinstating the Plaintiff's employment and awarding back pay from the date he was terminated to the date of reinstatement and front pay or, in the alternative;

    b.  Reversing the Board's Decision, ordering the convening of the committee of three to resolve the disagreements at issue regarding the interpretation of the SAVE Agreement, and awarding back pay from the date the Plaintiff was terminated to the date of reinstatement and front pay.

    c.  Such other and further relief as the Court deems just, equitable and proper.

(d)     On Counts Seven and Eight for Violation of the New York State Human Rights Law §296 *et seq.*, and the New York City Administrative Code § 8-101 *et seq.*:

    a.  an Order reinstating Plaintiff's employment with the MTA;

    b.  judgment for compensatory damages for Plaintiff's lost income, including back pay from the time he was wrongly terminated and forward pay, together

with the lost contributions to his pension plan, medical benefits, and other remuneration to which he was entitled through his employment with the MTA, in an amount to be determined at trial, but in any event not less than $6,000,000.00.

c.   judgment for compensatory damages for Plaintiff's extreme emotional and mental distress and anguish in an amount to be determined at trial but estimated to be not less than $2,000,000;

d.   judgment for punitive damages in the amount of $12,000,000;

e.   judgment for Plaintiff's reasonable attorneys' fees, costs and disbursements.

f.   such other and further relief as may be just and proper.

Dated: New York, New York
       April 14, 2011

                                    Respectfully submitted,

                              By:   _____
                                    Brian Gardner (BG 0006)
                                    Sullivan Gardner PC
                                    Attorneys for Plaintiff
                                    475 Park Avenue So.
                                    New York, New York 10016
                                    (212) 687-5900

# EXHIBIT A

AWARD No. 134
NMB CASE No. 134
UNION CASE No.134
COMPANY CASE No.ARSE10/NY002(D)

## SPECIAL BOARD of ADJUSTMENT NO. 1001

PARTIES TO THE DISPUTE:

THE AMERICAN RAILWAY AND AIRWAY
SUPERVISORS ASSOCIATION

- and -

MTA METRO-NORTH COMMUTER RAILROAD

STATEMENT OF CLAIM:

1. The Carrier violated the Agreement when, by Notice of Discipline dated September 2, 2010 it improperly terminated Claimant Eugene Sokolowski as the result of a disciplinary hearing held on August 25, 2010.

2. The Carrier shall now be required to return the Claimant to service and make him whole for all lost wages and benefits, with all seniority rights restored.

OPINION OF THE BOARD:

At the time this dispute arose, Eugene Sokolowski ("Appellant") had been employed by Metro-North Commuter Railroad ("Carrier") for twenty-two (22) years. For some time he had been assigned to the position of Mechanical Foreman on the midnight to eight a.m. shift at Carrier's Grand Central Terminal location, under the direction of Supervisor of Structures Stephen Hussey.

On the evening of July 15-16, 2010, Metro-North Police escorted officers from the Inspector General Office, "to check a location (on Carrier property) for possible criminal activity." The IG investigative personnel were proceeding on the basis of an anonymous report received through their "tip line". About 12:30 am on July 16, Metro-North Detectives Rubino and Guerra escorted the IG investigators to a set of offices and locker rooms near Track 100 at GCT. Detecting a "distinctive odor" as they approached a doorway, the officials entered unannounced into what was subsequently

-1-

AWARD No. 134
NMB CASE No. 134
UNION CASE No.134
COMPANY CASE No.ARSE10/NY002(D)

determined to be Terminal Supervisor Hussey's office.  The officers observed Mr. Sokolowski and

two other Carrier employees, "seated in the room, around a desk, with contraband on the desk—a

bottle of alcohol along with some bags containing a green leafy substance".  When apprehended and

questioned, the Appellant denied drinking alcohol or smoking pot on the job but admitted smoking

marijuana prior to reporting for duty.  He also voluntarily removed from his pocket and turned over

to the officers a baggie of material which he identified as marijuana. The IG officers issued citations

and summonses to all three of the employees for illegal possession of drug paraphernalia and a

controlled substance on MTA property.  Officers Rubino and Guerra reported all these findings to

Terminal Superintendent Operations Support A. Seaton, who arranged for drug and alcohol testing

of the apprehended employees.

  Mr. Sokolowski's Breathalyzer test showed negative for alcohol but his urine sample

subsequently tested positive for metabolites of marijuana.  In addition, the leafy material in the

baggie on the table, as well as that contained in another baggie which the Appellant removed from

his pocket and turned over to the officers at the time of his apprehension, proved to be marijuana.

He denied consuming any alcohol before or after the Midnight start of his July 16-17 shift, but did

admit to smoking pot prior to reporting for work.  He also denied any knowledge of or familiarity

with the bag of pot, the drug paraphernalia and other contraband found on top of the desk at which

he was seated.

  On July 22, 2010, the Appellant received a formal notice to attend an investigation into his

responsibility, if any, on the following charges:

  1.  Violation of Metro-North's Substance Abuse Policy number 21-012 and Safety
    Instruction 200.8 in that the urine sample you submitted on Friday, July 16, 2010
    at 4:30 AM, for reasonable suspicion in the Metro-North OHS Department, was
    positive for a controlled substance.

AWARD No. 134
NMB CASE No. 134
UNION CASE No.134
COMPANY CASE No.ARSE10/NY002(D)

2.   Conduct unbecoming a Metro-North employee and violation of Metro-North's Substance Abuse Policy number 21-012 and General Safety Instruction 200.8 in that on July 16, 2010 at approximately 12:35 AM, you were in possession of a controlled substance, drug paraphernalia and alcohol on Metro-North property, in an office in the vicinity of the Track 100 area in Grand Central Terminal, for which you were issued a criminal summons by the MTAPD.

3.   Conduct unbecoming a Metro-North employee and failure to perform duties as assigned in that while on duty July 16, 2010, as a Supervisor during your tour of duty 12:00 AM to 8:00 AM, at approximately 12:35 AM you were in an office in the vicinity of Track 100 in Grand Central Terminal with two other employees with a controlled substance, drug paraphernalia and alcohol present.

The Hearing was held on August 25, 2010.  The Appellant was present throughout the proceedings and was represented by Mr. William Mills, Chairman of Maintenance & Equipment and Mr. Joseph Derillo, ARASA International Representative.  At the hearing, Mr. Sokolowski essentially admitted to his culpability of the charges, apologized for his behavior and requested leniency due to his seniority, relatively clean employment record and Viet Nam veteran status. Thereafter, on September 2, 2010, the Claimant was informed as follows:

Outline of Offense:

1.   Violation of Metro-North's Substance Abuse Policy number 21-012 and Safety Instruction 200.8 in that the urine sample you submitted on Friday, July 16, 2010 at 4:30 AM, for reasonable suspicion in the Metro-North OHS Department, was positive for a controlled substance.

2.   Conduct unbecoming a Metro-North employee and violation of Metro-North's Substance Abuse Policy number 21-012 and General Safety Instruction 200.8 in that on July 16, 2010 at approximately 12:35 AM, you were in possession of a controlled substance, drug paraphernalia and alcohol on Metro-North property, in an office in the vicinity of the Track 100 area in Grand Central Terminal, for which you were issued a criminal summons by the MTAPD.

3.   Conduct unbecoming a Metro-North employee and failure to perform duties as assigned in that while on duty July 16, 2010, as a Supervisor during your tour of duty 12:00 AM to 8:00 AM, at approximately 12:35 AM you were in an office in the vicinity of Track 100 in Grand Central Terminal with two other employees with a controlled substance, drug paraphernalia and alcohol present.

Discipline: Dismissal in all capacities.  To be effective:  Immediately

-3-

AWARD No. 134
NMB CASE No. 134
UNION CASE No.134
COMPANY CASE No.ARSE10/NY002(D)

On September 16, 2010, the Organization appealed Carrier's decision premised upon the following:

> This letter is the Organization's appeal of the discipline of dismissal assessed Claimant Eugene Sokolowski, as a result of a disciplinary hearing held on August 25, 2010. The Carrier violated the Operation Save Agreement when it refused to provide the Claimant with a waiver in accordance with the mandatory terms of that Agreement. During the hearing, Carrier witness Seaton testified that the Claimant should have been offered the SAVE waiver. She further testified that she was instructed not to offer the waiver because of the public nature of the incident. Ms. Seaton also testified that the terms of the SAVE Agreement are mandatory on the Carrier. Ms. Seaton confirmed that this was the first incident of an alleged drug or alcohol violation in which the accused employee was not provided with the SAVE waiver. Ms. Seaton testified that this was the first time that a waiver was not offered for such an offense. Ms. Seaton stated that the instructions not to provide the Claimant with the required waiver came from 'the highest levels of Metro-North management'. There is no ambiguity in the language of the SAVE Agreement. The Carrier must provide the Claimant with a waiver and permit him to enter the EAP program. In this dispute the language of the SAVE Agreement requires that the Carrier provide the Claimant with a waiver.
>
> In conference, the Carrier presented several additional attempts to justify its disparate treatment of the Claimant. The Carrier's Highest Officer contended that it did not have to offer the Claimant a waiver because of the language of the SAVE Agreement 'any other apparent rule violation'. The Carrier's position is partially correct but it does not apply in the instant case. This provision was added to the Rule G agreements to be used in cases of additional serious rule violations. The example the Carrier gave in conference was the case of an engineer who is responsible for an accident involving physical injury or serious safety violations. This is a prime example of the intent of the language but that is not the situation in the instant case. In this case, the Claimant was charged with 3 charges all stemming from the Claimant's alleged actions in an office. There are no other rule violations. The circumstances are exactly the type of case the SAVE Agreement was intended to address. This Claimant, who has been a valuable employee for 22 years, with a good record, is the type of employee that the SAVE Agreement was negotiated for.
>
> In addition, the Carrier has not met its burden of proof in connection with Charges 2 and 3. With respect to Charge 2, there was no testimony or evidence presented to support the allegation that the Claimant failed to properly perform his duties. Likewise, Charge 3 was issued because the Claimant was issued a criminal summons in connection with this incident. However, the summons was dismissed.

– 4 –

Finally, in support of its leniency plea on behalf of the Claimant, the Organization pointed to the

Claimant's "cooperation" and "honesty" with the police officers when he was questioned on

July 16, 2010.

In its denial to the Organizations appeal, the Carrier asserted that:

At the conference, the Organization asserted that the Carrier was mandated to provide the Appellant with a waiver under the Operation Save Agreement. The Carrier does not agree. At the administrative trial the Carrier proved, by substantial and credible evidence, that the Appellant was guilty of all 3 charges levied against him and why a waiver under the SAVE Agreement is not applicable in this case. The dismissal in the case was appropriate discipline. Your argument that the waiver was mandatory is not supported by the specific language of the agreement. The Operation SAVE Agreement between Metro-North and American Railway Supervisors Association, effective November 30, 1990 clearly states in paragraph one (1): 'IT IS AGREED: An apparent Rule G or similar substance rule violation, which is a first offense, and which does not involve any other apparent rule violation....' Therefore, Operation SAVE does not apply in this case.

As for the first charge, Violation of the Substance Abuse Policy, the Appellant testified that he presented himself for work after having consumed alcohol in such quantities as to register a positive (.033) Breath Alcohol Test.

Charge two - Conduct unbecoming a Metro-North Employee and Violations of General Safety Instruction 200.8 was proven with additional testimony from the Appellant. He testified to being in possession of Alcohol and Drug paraphernalia in his office, while on duty.

The third charge Failure to Perform Duties was proven with testimony from Detective Rubino, of the MTA Police. According to the testimony and the Police Incident Report, at approximately 12:35 AM, just over thirty minutes into the Foreman Sokolowski's tour of duty, MTA Police, Detectives from District 5 and the MTA Inspector General's Office personnel entered an office, which in testimony and by photograph 3, was identified as the office used by the Claimant and the two other employees who were apprehended. They observed the Appellant and the two other employees 'sitting inside the office, next to a table with two (2) plastic bags of marijuana, a red/yellow metal pipe, a metal disc used to grind marijuana and a 25.4 ounce bottle of Canadian Club whiskey'.

The record is clear that the employee is guilty as charged. The fact that you rest your appeal on a flawed interpretation of the SAVE Agreement suggests guilt and is an

--5--

AWARD No. 134
NMB CASE No. 134
UNION CASE No.134
COMPANY CASE No.ARSE10/NY002(D)

attempt to seek lenience. The trial transcript is irrefutably incriminating in nature. There are multiple admissions of guilt by the Appellant and credible evidence providing proof of all the charges. The Organization's arguments are insufficient. An Operation SAVE waiver is not mandatory when there are multiple rule violations and the company has not given them automatically in such cases. Nor is a waiver applicable in this case. Therefore, your claim is denied in its entirety.

At the outset, the Organization asserted that the Appellant may not have been fully aware of Carrier Policy 21-012, which basically states that it is in violation of Carrier wide policies "to possess any kind of alcohol, drugs, or drug paraphernalia" on Carrier property. However, according to Superintendent Seaton's uncontested testimony, all Metro-North employees receive a copy of the Policy through the mail on a yearly basis, and: "This year, it was available on the company internet". Despite any protestations the Appellant may have had, the uncontested testimony in that regard renders that assertion moot.

In the circumstances, Carrier has established and, indeed, Claimant Sokolowski frankly admitted, that he violated Policy 21-012; thereby his guilt is proven with regard to Charge 1. By his own admission he had marijuana on his person while on the job and he had smoked pot prior to coming to work. Nor is there any room for doubt that he was in possession of marijuana and seated at a table with whiskey and drug paraphernalia in plain sight on the desk at which he was seated when the police entered the office. The Claimant admitted that each of the contraband items were clearly visible on the table and that he also was in possession of an additional baggie of marijuana, denying only that he had imbibed any on the job. He did not test positive for alcohol but there is no dispute that he tested positive for metabolites of marijuana.

AWARD No. 134
NMB CASE No. 134
UNION CASE No.134
COMPANY CASE No.ARSE10/NY002(D)

The Carrier presented persuasive proof that Mr. Sokolowski violated Carrier Substance Abuse Policy number 21-012, as charged. Given the Claimant's candid admissions and the scope and breadth of his supervisory responsibilities, we find that the Carrier also proved its related charge of failure to perform assigned duties. Finally, the Claimant was charged with conduct unbecoming a Metro-North employee and failure to perform duties as assigned in that while on duty July 16, 2010, as a Foreman during his tour of duty 12:00 AM to 8:00 AM, at approximately 12:35 AM "you were in an office in the vicinity of Track 100 in Grand Central Terminal with two other employees with a controlled substance, drug paraphernalia and alcohol present". [Although we do concur with the Organization's view that Charges 2 and 3, as drafted, could be construed as somewhat over-blown piling on, we find no fatal error in the redundancies].

We find no valid reason to disturb the Carrier's conclusion that Mr. Sokolowski exhibited "conduct unbecoming/failure to perform assigned duties" when he reported for his enumerated supervisory duties after admitted use of marijuana. Similarly, we conclude the Carrier met its burden of persuasion of proving the "conduct unbecoming/in-possession" violations of Carrier Substance Abuse Policy number 21-012. By his own admission, he was in possession of marijuana and he was found by police authorities "having a party" with two fellow supervisors—with whiskey, marijuana and drug paraphernalia in plain sight—in the supervisor office approximately one half hour after his shift commenced.

In all of the facts and circumstances, we can find no basis for reversing Carrier's decision to terminate the Appellant's employment. Even though the result may seem harsh, leniency in such a case simply cannot rightfully be dictated by an arbitration Board based solely on our personalized notions of industrial justice.

-7-

AWARD No. 134
NMB CASE No. 134
UNION CASE No.134
COMPANY CASE No.ARSE10/NY002(D)

Nothing in this decision is intended, nor should be construed as precedent, to chill continued access to utilization of the Operation SAVE waiver policy, which by design is beneficial to employees, the Carrier and the public. The SAVE agreement very specifically states the grounds for entitlement to its benefits and each such case must rise or fall on its unique facts and circumstances. However, given the egregious nature of the Appellant's violations, the Appellant in this particular case did not have a demand right to a SAVE waiver.

No one can take any satisfaction in presiding over the self-inflicted termination of this Appellant's long and apparently unblemished career. It is unfortunate and painful to the point of tragedy. But in the final analysis, termination for such serious proven charges is not on its face arbitrary, capricious or unreasonable. The Carrier's decision to deny the leniency request was not a violation of the language of the SAVE agreement. Nor is there any persuasive showing of discrimination, animus or disparate treatment.

<u>AWARD</u>

Claim denied.

_____
Nancy Faircloth Eischen, Chair

_____
Union Member                              Company Member

-8-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

EUGENE SOKOLOWSKI,

Case No.:

Plaintiff,

-against-

METROPOLITAN TRANSPORTATION AUTHORITY,
MTA METRO-NORTH RAILROAD and MTA
METRO-NORTH COMMUTER RAILROAD,

Defendant.

_____

COMPLAINT

_____

Attorneys for Plaintiff
Sullivan Gardner PC
475 Park Avenue South, 33rd Floor
New York, New York 10016
(212) 687-5900

_____

To:

Attorney(s) for Defendant

_____

Service of a copy of the within                    is hereby admitted.

Dated,

_____

Attorney(s) for Plaintiff

_____

Sir: -- Please take notice
___ Notice of Entry
that the within is (certified) true copy of a
duly entered in the office of the clerk of the within named court on          20
___ Notice of Settlement
that an order                    of which the within is a true copy will be presented for
settlement to the HON.                              one of the judges
of the within named court, at
on                    20    at              M.
Dated,

Yours,  etc.