```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────────
EUGENE SOKOLOWSKI,

                    Plaintiff,            11 Civ. 2623 (JGK)

       - against -                        OPINION AND ORDER

METROPOLITAN TRANSPORTATION
AUTHORITY, MTA METRO-NORTH RAILROAD,
and MTA METRO-NORTH COMMUTER
RAILROAD,

                    Defendants.
────────────────────────────────────────
```

**JOHN G. KOELTL, District Judge:**

The plaintiff, Eugene Sokolowski, brought this action against the Metropolitan Transit Authority (the "MTA"), MTA Metro-North Railroad, and MTA Metro-North Commuter Railroad (collectively, the "defendants"), pursuant to the Railway Labor Act, 45 U.S.C. § 151 et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.  The plaintiff was terminated by the defendants and his termination was upheld by the Special Board of Adjustment No. 1001 (the "Board").  In various claims, the plaintiff seeks to reverse the Board's decision and to obtain an order that the plaintiff be reinstated.  Jurisdiction for these claims is alleged pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 45 U.S.C. § 153 (creation of National Railroad Adjustment Board and special adjustment boards, including

jurisdiction to review orders of those boards).  The plaintiff also claims that he was discriminated against on the basis of his age in violation of the NYSHRL and the NYCHRL.  Jurisdiction over these claims is asserted under supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

The defendants move to dismiss the claims under the Railway Labor Act pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.  They move to dismiss the claims under the NYSHRL and NYCHRL pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

I.

When presented with motions under both Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction and Rule 12(b)(6) to dismiss for failure to state a claim upon which relief can be granted, the Court must first analyze the Rule 12(b)(1) motion to determine whether the Court has the subject matter jurisdiction necessary to consider the merits of the action.  See Rhulen Agency, Inc., v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 2000); McKevitt v. Mueller, 689 F. Supp. 2d 661, 664 (S.D.N.Y. 2010).

In defending a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving the

2

Court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true. See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004). The Court does not, however, draw all reasonable inferences in the plaintiff's favor. Id.; Graubart v. Jazz Images, Inc., No. 02 Civ. 4645, 2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006). Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists. See APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003); Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir. 1998); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986). In conducting this analysis, "the Court is guided by that body of decisional law that has developed under Federal Rule of Civil Procedure 56." McKevitt, 689 F. Supp. 2d at 665 (citing Kamen, 791 F.2d at 1011).

## II.

The following assertions of fact are assumed to be true for the purpose of this motion to dismiss, unless otherwise noted.

The plaintiff worked for the MTA for approximately twenty two years and maintained an unblemished record during his tenure as an MTA employee, until his termination. (Compl. ¶¶ 7-8.) On September 2, 2010, when the plaintiff was terminated, he was 45 years of age and held the position of Mechanical Foreman responsible for the maintenance and repair of MTA elevators. (Compl. ¶ 7.) While employed by the MTA, the plaintiff was a member of the American Railway and Airway Supervisors' Association Maintenance of Equipment Union ("ARASA"). (Compl. ¶ 12.) A collective bargaining agreement entered into by ARASA and the MTA governed the terms of the plaintiff's employment.

Prior to July 16, 2010, the MTA issued Operating Procedure No. 21-012 and General Safety Instruction 200.8, both of which prohibit employees from appearing at work under the influence of alcohol or drugs and from possessing alcohol or drugs in the workplace. (Compl. ¶¶ 10-11.)

Despite these prohibitions, ARASA negotiated an agreement with the MTA known as the "SAVE Agreement" that allows employees charged with the violation of a substance abuse rule to avoid termination when certain conditions are met. (Compl. ¶ 13.) To qualify under the SAVE Agreement, the alleged substance abuse rule violation must be the employee's first offense and the offense must not involve any other apparent rule violation. (Compl. ¶ 14.) Employees who qualify submit to the Metro-North

Employee Assistance Program ("EAP") and accept counseling; they return to work only upon a favorable recommendation, also known as a waiver, from an EAP counselor. (Compl. ¶ 13; Decl. of Brian Gardner ("Gardner Decl.") Ex. B.)

The SAVE Agreement is mandatory on the MTA. Accordingly, any employee who qualifies under the SAVE Agreement must be mailed a waiver letter within 24 hours of removal from service. (Compl. ¶¶ 15-16.) After receiving a waiver letter, an employee must meet the conditions in the SAVE Agreement to be reinstated to employment. (Compl. ¶ 15.)

On July 16, 2010, based on an anonymous tip, an officer from the MTA Police Department, along with New York City police officers and personnel from the MTA Inspector General's office, entered an office in Grand Central Terminal that was occupied by the plaintiff and two other MTA employees. (Compl. ¶ 21; Decl. of Frank Rinaldi ("Rinaldi Decl.") Ex. B., at 4.) Inside the office, the plaintiff and two others were sitting at a desk upon which were a bottle of whiskey, a metal pipe, a disc used to grind marijuana, and two small bags of marijuana. (Compl. ¶ 21; Rinaldi Decl. Ex. B, at 4.) When questioned by the officers, the plaintiff admitted that he had smoked marijuana the weekend before but denied smoking marijuana while on duty. (Compl. ¶ 21.) The plaintiff voluntarily turned over a bag of marijuana when he was asked if he possessed any contraband. (Compl. ¶ 21;

5

Rinaldi Decl. Ex. B, at 4.)  The officers issued the plaintiff a criminal summons for the unlawful possession of marijuana. (Rinaldi Decl. Ex. B., at 2.)  Later that night, the MTA directed the plaintiff to submit a urine sample, which tested positive for the presence of marijuana.  (Compl. ¶ 22.)

As a result of the positive drug test and the July 16 incident, on July 22, 2010, the MTA instituted three charges against the plaintiff.  The charges alleged that the plaintiff (1) violated Substance Abuse Policy No. 21-012 and General Safety Instruction 200.8 by submitting a positive urine sample, (2) engaged in conduct unbecoming a Metro-North employee by possessing a controlled substance, drug paraphernalia, and alcohol on Metro-North property, and (3) failed to perform duties by possessing a controlled substance, drug paraphernalia, and alcohol on Metro-North property during his tour of duty. (Compl. ¶ 19.)  The plaintiff was removed from service on July 16, as a result of the incident, but did not receive a SAVE Agreement waiver letter.  (Compl. ¶¶ 23, 25.)

On August 25, 2010, a disciplinary hearing was held to investigate the charges against the plaintiff.  (Compl. ¶ 20.) At the hearing, Rita Seaton, the MTA's Superintendent of Operation Support at Grand Central Terminal, testified that she was directed not to offer the plaintiff a SAVE waiver because

6

the incident had been reported on by the media.  (Compl. ¶¶ 29, 32.)

On September 2, 2010, the MTA sent the plaintiff a Notice of Discipline that terminated his employment. (Compl. ¶ 35.) The plaintiff appealed the termination, but his appeal was denied by letter on September 21.  (Compl. ¶ 36.)  The letter explained that the denial was based on the MTA's conclusion that guilt had been proven on all three charges and that the plaintiff was not eligible for a SAVE waiver.  (Compl. ¶ 36.)

The plaintiff appealed the denial to the Board.  (Compl. ¶ 42.)  The Board affirmed the MTA's decision to terminate the plaintiff and held that the plaintiff was not eligible for a SAVE waiver.  (Compl. ¶ 42.)

The plaintiff instituted this action pursuant to the Railway Labor Act based on his argument that the Board's decision exceeded its proper jurisdiction.  See 45 U.S.C. § 153 First (q).  The plaintiff also brought claims for age discrimination under the NYSHRL and the NYCHRL based on his argument that the MTA terminated his employment and refused to extend him a SAVE waiver based on his age.

### III.

In general, federal courts lack subject matter jurisdiction to review the decision of an adjustment board.  See Andrews v.

7

Louisville & Nashville R.R. Co., 406 U.S. 320, 324-25 (1972); CSX Transp., Inc. v. United Transp. Union, 950 F.2d 872, 877 (2d Cir. 1991); DeClara v. Metro. Transp. Auth., 748 F. Supp. 92, 94 (S.D.N.Y. 1990). The Railway Labor Act commands that a decision of an adjustment board shall be "final and binding on the parties." 45 U.S.C. § 153 Second. Judicial review of a decision of an adjustment board is limited to three specific grounds: (1) the board failed to comply with the requirements of the Railway Labor Act; (2) the board failed to confine its decision to matters within its jurisdiction; and (3) fraud or corruption of a member of the board. See 45 U.S.C. §§ 153 First (q), 145 Second; Union Pac. R.R. Co. v. Sheehan, 439 U.S. 89, 93 (1978).[1] Judicial review of a decision of an adjustment board is "among the narrowest known to the law." United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 810 (2d Cir. 2009)

---

[1] The Railway Labor Act establishes a National Railroad Adjustment Board, and limits judicial review of the decision of any divisions of that Adjustment Board. 45 U.S.C. § 153 First (q). The Act also authorizes the creation of special adjustment boards, and provides that the decisions of those boards "shall be final and binding upon both parties to the dispute," and "[c]ompliance with such awards shall be enforcible [sic] by proceedings in the United States district courts in the same manner and subject to the same provisions that apply to proceedings for enforcement of compliance with awards of the Adjustment Board." Id. § 153 Second; see also United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 810 (2d Cir. 2009). The parties do not dispute that the Board at issue in this case is a special adjustment board.

8

(quoting Sheehan, 439 U.S. at 91).  The plaintiff alleges that the Board in this case exceeded its jurisdiction.

For a court to find that an adjustment board exceeded its jurisdiction, the award must be "wholly baseless and completely without reason."  Gunther v. San Diego & Ariz. E. Ry. Co., 382 U.S. 257, 261 (1965); Giraud v. MTA Metro-N. R.R. Co., No. 09 Civ. 2187, 2010 WL 931886, at *4 (S.D.N.Y. Mar. 12, 2010). Moreover, "[w]here fraud is not at issue, the court's inquiry is limited to the sole issue of 'whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it.'" Segal v. Trans World Airlines, Inc., 63 F. Supp. 2d 373, 380 (S.D.N.Y. 1999) (quoting CSX Transp., 950 F.2d at 877).[2]

---

[2] At oral argument, the plaintiff argued that the Board lacked jurisdiction to decide whether the plaintiff was entitled to the benefit of a SAVE waiver because there is a provision of the SAVE Agreement that provides that:  "If and when disagreements arise as a result of interpretations of the [SAVE] Agreement, a committee of three . . . will meet as expeditiously as possible to resolve any matters in dispute."  (Gardner Decl. Ex. B, at ¶ 8.)  This provision is an administrative remedy that does not divest the Board of jurisdiction to review disciplinary actions. The Agreement establishing the Board provides:  "Such Board shall have exclusive jurisdiction over all final appeals in . . . discipline proceedings . . . ."  Agreement Between ARASA and Metro-N. Commuter R.R. Co., at 1 (June 30, 1987), attached to Letter from Sofia C. Hubscher, Deputy Gen. Counsel, Metro-N. R.R (Mar. 22, 2012).  Moreover, when the plaintiff appealed the discipline assessed against him, he claimed that the failure to afford him the SAVE waiver was error and not that there was no jurisdiction to review the discipline.  See Letter from William Mills, Gen. Chairman, ARASA, to Andrew J. Paul, Dir. of Labor Relations, Metro-N. R.R. (Sept. 16, 2010), attached as Ex. E to

The plaintiff argues that the Board exceeded its jurisdiction by finding that he was not eligible for a SAVE waiver.[3]  The plaintiff alleges that the Board based its finding of ineligibility on the "egregious nature" of the charges against the plaintiff, despite the lack of an exception in the SAVE Agreement for "egregious" charges.  The plaintiff also argues that the Board found that the plaintiff had violated only one rule (Substance Abuse Policy No. 21-012), which makes the SAVE Agreement applicable to him.  Thus, according to the plaintiff's argument, the Board's decision lacked a foundation

---

Rinaldi Decl.  Similarly, when the plaintiff appealed to the Board, the plaintiff claimed that the defendants' decision to discipline the plaintiff was erroneous, not that the Board lacked the jurisdiction to decide the dispute because of the existence of the three-member panel provided by the SAVE Agreement.  (Gardner Decl. Ex. D ("Board Decision").)  Any argument that the existence of the three-member SAVE committee is without merit and was, in any event, waived.

[3] The plaintiff points to the defendants' preliminary pretrial statement from another case by a different plaintiff arising from the incident that led to that plaintiff's termination, which contains an allegation that an MTA employee testified in a disciplinary hearing that the other employee should have been granted a SAVE waiver.  (Supplemental Decl. of Brian Gardner ("Gardner Suppl. Decl.") Ex. A, at 4.)  The plaintiff suggests that this testimony supports his argument that he should have been granted a waiver by the MTA's own admission.  However, these statements do not differ materially from the plaintiff's allegations of that witness's testimony at his disciplinary hearing.  (Compl. ¶¶ 29-33.)  The issue in this case is whether the decision of the Board was wholly baseless and completely without reason, not whether there were contrary arguments.

in reason or fact because the SAVE Agreement applied to him and does not contain an exception for "egregious" charges.

In this case, the Board did not exceed its jurisdiction by finding that the plaintiff was not eligible for the SAVE program.  The SAVE Agreement is limited to employees who are charged with only a single substance abuse violation.  Here the plaintiff was charged with three violations of the MTA's rules.  The Board upheld each of the violations and held that the MTA proved each of the charges.  (Board Decision at 6-7.)  Contrary to the plaintiff's allegation in the Complaint, the Board found that each violation was a separate violation and the Board's decision on this point is supported by the record.  The plaintiff admitted to the first charge against him, namely the violation of Substance Abuse Policy No. 21-012.  The MTA proved the second charge based on the plaintiff's admissions and the evidence collected during the incident because the evidence showed that the plaintiff possessed marijuana, alcohol, and drug paraphernalia at the workplace.  The third charge of failure to perform duties also was proved because the evidence showed that the plaintiff was in an office with two other employees in possession of marijuana, alcohol, and drug paraphernalia, when he was supposed to be performing his job.  (Board Decision at 6-7.)  Although the Board noted that the latter two charges "could be construed as somewhat overblown piling on," it went on to

11

"find no fatal error in the redundancies." (Board Decision at 7.) Because the Board found that the plaintiff committed three violations instead of one violation based on the record evidence, its decision that the plaintiff was ineligible for a SAVE waiver was not wholly baseless or completely without reason. Thus the Board did not exceed its jurisdiction by finding that the plaintiff was ineligible for a SAVE waiver.

The plaintiff's argument that the Board improperly read an exception into the SAVE Agreement based on the "egregious" nature of charges takes the Board's statement out of context. The Board found that the MTA had proved three violations committed by the plaintiff, which rendered the plaintiff ineligible for a waiver. The Board emphasized its ineligibility conclusion by stating that "the egregious nature of the [plaintiff's] violations" deprived the plaintiff of the right to a waiver. (Board Decision at 8.) Clearly the Board viewed the plaintiff's multiple violations as egregious and based on those multiple violations found that he lacked a right to a SAVE waiver. This reading of the Board's decision is confirmed by its finding that the MTA had not violated the language of the SAVE Agreement by denying the plaintiff's leniency request. (Board Decision at 8.) The Board based its decision on the plaintiff's multiple violations that were supported by the

12

record and thus it acted within its jurisdiction when it held that the plaintiff was ineligible for a SAVE waiver.

The plaintiff also argues that the Board exceeded its jurisdiction by misapprehending its authority as to the standard of review to apply. The Board mentioned that the MTA's decision to terminate the plaintiff was not "arbitrary, capricious or unreasonable." (Board Decision at 8.) However, the Board did not purport to use that standard in assessing the evidence. It is clear that the Board concluded that the MTA's decision was not a violation of the SAVE Agreement because the MTA proved that the plaintiff committed three violations. In reaching that conclusion, the Board correctly stated that it could not impose its "personalized notions of industrial justice." (Board Decision at 7.) The Board acted properly by judging the MTA's actions against the SAVE Agreement and the factual record. The Board's decision that the plaintiff was ineligible for a SAVE waiver was supported by the record and thus the Board did not exceed its jurisdiction. The defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is **granted** because the Board did not exceed its jurisdiction.

It is unnecessary to reach the other grounds asserted by the defendants for dismissal. Because the plaintiff's federal claims are dismissed for lack of subject matter jurisdiction, the Court declines to exercise supplemental jurisdiction over

13

the plaintiff's NYSHRL and NYCHRL claims and dismisses them without reaching the merits. See 28 U.S.C. § 1367(c)(3); Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305 (2d Cir. 2003); Merrill Lynch Ltd. P'ships Litig. v. Merrill Lynch & Co., 154 F.3d 56, 61 (2d Cir. 1998).

## CONCLUSION

The Court has considered all of the arguments of the parties. To the extent not specifically addressed above, they are either moot or without merit. For the reasons explained above, the defendants' motion to dismiss the plaintiff's federal claims for lack of jurisdiction is **granted**. The Court declines to exercise supplemental jurisdiction over the plaintiff's NYSHRL and NYCHRL claims and those claims are **dismissed without prejudice**. The Clerk of the Court is directed to enter judgment dismissing the Complaint and closing this case. The Clerk is also directed to close any open motions.

Dated: New York, New York
March 28, 2012

John G. Koeltl
United States District Judge